UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUCY K. KEITH,

    Plaintiff,

    v.

SIROMED PHYSICIANS SERVICES, INC.,
ET AL.,

    Defendants.

_____/

Case No. 20-cv-12551

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## ORDER AND OPINION DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#20] AND DEFENDANTS' MOTION TO STRIKE LUCY K. KEITH'S DECLARATION [#24]

### I. INTRODUCTION

On September 17, 2020, Plaintiff Lucy K. Keith commenced the instant action against Defendants Siromed Physicians Services, Inc., and A4 Management Company, LLC, (the "Defendants"), for retaliating and interfering with her right to FMLA medical leave. *See* ECF No. 1. Before the Court is Defendants' Motion for Summary Judgment [#20] and Defendants' motion to strike Lucy K. Keith's declaration [#24], submitted on August 27, 2021, and October 28, 2021, respectively. ECF Nos. 20, 24. Plaintiff filed Responses in Opposition on September 17, 2021, and November 11, 2021. ECF Nos. 21, 29. Defendants submitted Reply briefs in support of their motions on October 1, 2021, and

November 23, 2021.  ECF Nos. 23, 31.  Plaintiff also filed exhibits in support of her Response in Opposition to Defendants' Motion for Summary Judgment on September 17, 2021, as well.  ECF No. 22-1, PageID.597.

The Court heard oral arguments on January 19, 2022, at 11:00 a.m.  For the reasons discussed below, the Court will DENY Defendants' Motion for Summary Judgment and DENY Defendants' motion to strike Lucy K. Keith's declaration.


## II. FACTUAL BACKGROUND

Plaintiff Lucy K. Keith began working as a Human Resources Coordinator at Defendant A4 on March 25, 2019.  ECF No. 1, PageID.3.  A4 manages anesthesia service companies.  ECF No. 20, PageID.74.  Those companies include Global Anesthesia Solutions, Anesthesia Associates of Ann Arbor, PLLC, and Midwest Anesthesia Consultants, LLC (the "A4 Companies").

Throughout Plaintiff's tenure at A4, Human Resources Manager Laura Zanchetta served as her supervisor.  ECF No. 20-4, PageID.136.  Zanchetta also supervised A4 Senior Human Resources Generalist Steve Leininger.  ECF No. 20-4, PageID.136; ECF No. 21-7, PageID.436.  Zanchetta wrote positive reviews about Plaintiff following her first several months at A4.  For example, in November 2019, Zanchetta commented, "Lucy is a pleasure to work with.  I would

like her to get more involved in all aspects of HR.  I look forward to see her grow within the department."  ECF No. 20-9, PageID.156.

In December 2019, Zanchetta began documenting a decline in the quality of Plaintiff's projects.  She noticed "a lot of errors" in a project Plaintiff worked on that month.  ECF No. 20-10, PageID.157.  On January 7, 2020, Plaintiff accidently sent a colleague another employee's performance review.  ECF No. 20-11, PageID.158.  Thirteen days later, she mistakenly used "Kevin Knapp" instead of "Robert Knapp" in a medical staff list she created and sent to a co-worker.  ECF No. 20-12, PageID.160.

As the pandemic escalated in April 2020, so did problems with Plaintiff's work product.  On April 3, 2020, however, A4 CEO Gregory Bock emailed Plaintiff that she had been designated "necessary to conduct minimum basic operations" at A4.  ECF No. 21-5, PageID.394.  But three days later, Plaintiff did not properly process medical coverage under COBRA for another A4 employee.  ECF No. 20-14, PageID.163.  Leininger proposed "auditing the work Lucy does" to Zanchetta after spotting the error, but subsequently opted against doing so.  *Id*.  Notably, at a leadership meeting on April 15, 2020, company management discussed reducing Plaintiff's hours.  ECF No. 20-23, PageID.207.

April also proved a difficult month for Defendants financially.  A4 CEO Bock testified that company earnings dropped from $12.3 million in 2019 to about $8.5–$9 million in 2020.  ECF No. 20-5, PageID.147.  In March alone, A4 was down $1.5 million in revenue.  ECF No. 20-23, PageID.207.  The revenue reduction led to cutbacks across the company: eliminating administrative and billing positions, management taking 20 percent payment cuts, suspending bonuses, and consolidating positions.  ECF No. 20-5, PageID.147.

On April 21, 2020, Plaintiff informed Zanchetta that she wished to take FMLA leave for a surgery she needed to relieve "extreme pelvic pain."  ECF No. 20-21, PageID.198–201.  Her doctor signed the FMLA Certification of Health Care Provider for Employee's Serious Health Condition form on April 30, 2020.  *Id*. at PageID.203.  It is undisputed between the parties that Plaintiff was eligible for FMLA leave.

Around that time, Plaintiff and Zanchetta discussed the costs and benefits of FMLA leave.  "I wanted you to get some kind of income" Zanchetta told Plaintiff.  ECF No. 20-19, PageID.175.  "[W]e can lay you off with the understanding obviously that … you could possibly come back to work, but in the meantime, you would at least have an opportunity to file for unemployment and receive income for a period of time," she continued.  *Id*. at PageID.176.  Zanchetta explained, "If you go on [FMLA] leave you can still apply for unemployment, but I don't know if

they're going to give it to you because you're still technically employed." *Id*. at PageID.175. Plaintiff responded, "I was going to just fill out the paperwork for the FMLA." *Id*. "[Y]ou can do that," Zanchetta said, "but if you're on FMLA I don't know if you can apply for unemployment. I mean it's your right. You can definitely apply for FMLA … that's fine too." *Id*. Zanchetta then walked Plaintiff through the FMLA leave application process.

Leininger sent Plaintiff her FMLA form the next day. ECF No. 20-20, PageID.196. Plaintiff subsequently filled out the FMLA paperwork. ECF No. 20-21, PageID.198. On April 27, 2020, Zanchetta reached out to Plaintiff asking what her expected dates for starting and ending her FMLA leave would be. ECF No. 21-11, PageID.554. Plaintiff responded that she would not know until her doctor got back to her. *Id*.

On May 1, 2020, Zanchetta wrote to Plaintiff that she would be laid off or furloughed beginning May 5, 2020. ECF No. 20-27, PageID.213. Zanchetta emailed a letter to Plaintiff's personal email on May 5, 2020, confirming Plaintiff's termination that day. ECF No. 20-18, PageID.172. Her letter emphasized that "[i]t is not clear when, if at all, you will be subject to a recall." *Id*. Plaintiff's doctor sent the FMLA paperwork to Defendants on May 5, 2020—the same day Defendants laid off Plaintiff. ECF No. 20-30, PageID.223. At least two other

employees had their positions terminated in May 2020.    ECF No. 20-24, PageID.210; ECF No. 20-25, PageID.211.

On June 24, 2020, Plaintiff emailed Zanchetta and Leininger asking for clarification surrounding her employment status and her FMLA leave request. ECF No. 20-31, PageID.227.  Zanchetta replied the next day, "Your FMLA request has been denied as you were laid off prior to A4 receiving the FMLA paperwork." ECF No. 20-32, PageID.228.   She continued, "and your position of HR Coordinator, like others, have since been eliminated." *Id*.

### III. LAW AND ANALYSIS

Defendants brings two motions before the Court: (1) a motion to strike Lucy K. Keith's declaration, and (2) a Motion for Summary Judgment.  The motion to strike is discussed first because its disposition affects the Court's analysis of Defendants' Motion for Summary Judgment.

### A. Motion to Strike Lucy K. Keith's Declaration

#### 1. Standard of Review

It is well established that "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [a non-moving party's] earlier deposition testimony." *See Reid v.*

6

*Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986).  The Sixth Circuit analyzes the term "contradictory" narrowly at the summary judgment stage for admissibility purposes.  *See Kesler v. Barris, Sott, Denn & Driker, PLLC*, 482 F. Supp. 2d 886, 897 (E.D. Mich. 2007) (citing *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907–08 (6th Cir. 2006)).  If the affidavit sets forth information not specifically elicited by direct questioning, then the affidavit should be admitted. *Id*.

Courts can also strike affidavits that "constitute[] an attempt to create a sham fact issue."  *See Aerel, S.R.L.*, 448 F.3d at 908 (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)).  The sham affidavit rule can apply "even without a direct contradiction … when the witness's affidavit is in tension with that prior testimony as long as the circumstances show that the party filed the affidavit merely to manufacture 'a sham fact issue.'"  *See Boykin v. Family Dollar Stores of Michigan, LLC*, 3 F.4th 832, 842 (6th Cir. 2021).  A non-exhaustive list of factors guides courts deciding whether a sham fact issue exists: "whether the affiant was cross-examined during [her] earlier testimony, whether the affiant had access to the pertinent evidence at the time of [her] earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion [that] the affidavit attempts to explain."  *Id*. at 909 (quoting *Franks*, 796 F.2d at 1237).

## 2. Application to Defendants' Motion to Strike Lucy K. Keith's Declaration

Defendants argue that the Court strike Plaintiff's declaration because it contradicts her deposition testimony. Following Defendants' August 27, 2021, motion for summary judgment, Plaintiff created a declaration supplementing her deposition testimony on September 13, 2021. ECF No. 21-12, PageID.556. The declaration alleges Zanchetta discouraged Plaintiff from taking FMLA leave on at least two occasions. *Id*. at PageID.555. On each occasion, Zanchetta allegedly told Plaintiff that taking FMLA leave "would be bad for [her] future at A4 Management[.]" *Id*. Plaintiff also states that Zanchetta expressed disappointment over Plaintiff not agreeing to a furlough instead of taking FMLA leave. *Id*. at PageID.556.

The Court agrees that where Plaintiff's declaration directly contradicts her prior testimony, it should be struck. "The rule set forth in *Reid* is grounded on the sound proposition that a party should not be able to create a disputed issue of material fact where earlier testimony on that issue by the same party indicates that no such dispute exists." *Aerel, S.R.L.*, 448 F.3d at 907. Defendants point to Plaintiff's answers to questions during her deposition as contradicting her later declaration:

Q: And no one at the company told you that you were selected for layoff because you asked for leave; correct?

A: It was obvious, but it was not stated.

Q: I didn't hear your answer.  Could you say it again please?

A: It was not stated to me, but it was obvious.

Q: So, you're saying—your claim is it was obvious that you were laid off because you asked for leave.  Is that what you're claiming?

A: Correct.

Q: Give me all the facts, why you say it was obvious that you were selected for layoff because you asked for leave.

A: Because prior to my request for the FMLA leave, I was informed I was going to get responsibilities.  Things were going pretty good, and I was definitely not expecting to be one of the people terminated or laid off.

Q: Did anybody tell you that your position was safe; that you would never be laid off?

A: In my last review, Laura Zanchetta had told me that I was going to move up in the company, and it's written on my review that she was going to have me move up in more responsibilities and grow within the company. So, that answers the question.

Q: Did anybody at the company tell you that you would never be laid off?

A: Nobody told me I would never be laid off.

ECF No. 21-2, PageID.332.  Defendants argue that paragraphs three and four of

Plaintiff's declaration contradict that deposition exchange because she testified that

no one said her FMLA leave request factored into her termination.   Defendants

also aver that paragraphs seven and eight of Plaintiff's declaration contradict her deposition testimony because Plaintiff never testified that Zanchetta said she would be disappointed if Plaintiff took FMLA leave.  In addition to the exchange above, Defendants point to the end of Plaintiff's deposition, when defense counsel twice asked Plaintiff whether any other facts supported her claims.   ECF No. 31, PageID.805–806.   Plaintiff never provided the contested facts her declaration contains.

The Court finds that Plaintiff's supplemental declaration does not directly contradict her prior testimony.   Defense counsel did not "directly question" Plaintiff about her conversations with Zanchetta concerning her FMLA leave request.  *See Aerel, S.R.L.*, 448 F.3d at 907.   And deponents are "under no obligation to volunteer information not fairly asked for by the questioner."  *Id*. Information not "directly questioned" about in the deposition, does not contradict a deponent's testimony.  *See Crawford v. Chipotle Mexican Grill, Inc.*, 773 F. App'x 822, 826 (6th Cir. 2019).  The failure to exhaust lines of questioning allows a non-moving party to fill in gaps missing from a deposition.  *See Briggs*, 463 F.3d at 513.  Without evidence suggesting Plaintiff's declaration *directly* contradicts prior testimony, the Court cannot find that it does.

Defendants argue in the alternative that Plaintiff's declaration creates a sham fact issue.  Applying the factors discussed above, the Court finds that Plaintiff's

declaration does not create a sham fact issue.  While Plaintiff had the information provided in her declaration at her deposition, she was never asked about conversations with Zanchetta.  Her declaration provides her perspective of the recorded declaration, supplementing her deposition rather than creating tension with it.  Nor does her deposition reflect any confusion with defense counsel's questioning.  Defense counsel twice asked Plaintiff whether she had any other information supporting her FMLA claims.  ECF No. 21-2, PageID.332.  Plaintiff never offered the challenged information in her declaration at any point because she was not required to.  The Sixth Circuit rule is clear: "'supplement[ing]' potentially ambiguous or incomplete testimony does not represent an attempt to create a faux fact issue." *Boykin*, 3 F.4th at 843.  Defense counsel's failure to exhaust questioning here is fatal to Defendants' motion to strike.  Accordingly, the Court will DENY Defendants' motion to strike Lucy K. Keith's declaration.

### B. Motion for Summary Judgment

#### 1. Standard of Review

Federal Rule of Civil Procedure 56 permits parties to file a motion for summary judgment when a claim, counterclaim, or crossclaim is asserted against them. FED. R. CIV. P. 56(b).  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

### 2.  Application to Plaintiff's FMLA claims

The sole Count in Plaintiff's Complaint is brought under the FMLA. Two discrete theories of recovery under the FMLA exist in the Sixth Circuit: "'(1) the so-called 'interference' or 'entitlement' theory arising from § 2615(a)(1), and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2).'" *See Dyer v. Ventra Sandusky, LLC*, 934 F.3d 472, 475 (6th Cir. 2019) (quoting

*Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012)).  Plaintiff advances claims under both theories.

### a. Retaliation Theory - § 2615(a)(2)

Defendants first request summary judgment on Plaintiff's retaliation claim, stating that Plaintiff cannot establish a *prima facie* case of FMLA retaliation. Specifically, Defendants argue that Plaintiff cannot show her "discharge" occurred in response to her FMLA leave request.  Even if Plaintiff could establish a *prima facie* showing, Defendants claim Plaintiff cannot prove the non-discriminatory reasons for terminating her are pretextual.

The FMLA prohibits employers from "discharge[ing] or in another manner discriminat[ing] against any individual for opposing any practice made unlawful by this subchapter."  29 U.S.C. § 2615(a)(2).  The Sixth Circuit engages with the burden-shifting framework defined by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), when weighing FMLA claims with indirect evidence.[1]  *See Romans v. Michigan Dep't of Human Services*, 668 F.3d 826, 842 (6th Cir. 2012);

---

[1] In Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment, she argues that her declaration constitutes direct evidence of discrimination.  ECF No. 21, PageID.276.  But Plaintiff's statements do not demonstrate that Defendants were "predisposed to discriminate on the basis of [the FMLA]," or that Defendants acted on such a disposition, without inferences being made.  *See Curry v. Brown*, 607 F. App'x 519, 523 (6th Cir. 2015) (quoting *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008)). Accordingly, the Court applies the indirect evidence standard.

*see also Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006). The plaintiff must first establish a *prima facie* case of discrimination. *See Johnson v. Fifth Third Bank*, 151 F. Supp. 3d 763, 769 (E.D. Mich. 2015). If completed, the burden shifts to the employer to present non-discriminatory reasons for its employment decision. *Id*. (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). The final question is whether the employer's reasons for its employment decision served as pretext to mask discrimination. *Id*.

 Plaintiff must establish four elements to make a *prima facie* FMLA retaliation case based on indirect evidence:

> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (citing *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)).

Here, the Court is satisfied that Plaintiff established a *prima facie* claim of FMLA retaliation. Defendants state Plaintiff cannot make a causal connection between her termination and her request for FMLA-leave. To satisfy the causal connection element, Plaintiff "must produce sufficient evidence to support an inference that [Defendants] took the adverse employment action because" Plaintiff

requested medical leave.  *See Ozier v. RTM Enterprises of Georgia, Inc.*, 229 F. App'x 371, 377 (6th Cir. 2007).  "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met."  *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).  Even "[p]roximity in time can raise a *prima facie* case of retaliatory discharge[.]"  *See Chandler v. Specialty Tires of Am.*, 283 F.3d 818, 826 (6th Cir. 2002); *see also Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 409 (6th Cir. 2014) ("We have held that the causal connection between the protected activity and the adverse employment action necessary for a *prima facie* case of retaliation can be established solely on the basis of close temporal proximity.").

The nexus between Plaintiff's FMLA leave request and her termination is sufficient evidence to satisfy the causal connection element to Plaintiff's FMLA retaliation claim.  Plaintiff requested FMLA leave on April 21, 2020, and Defendant terminated her position on May 1, 2020.  That temporal proximity is enough evidence to raise a *prima facie* case of FMLA retaliation.  *See DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (finding a plaintiff terminated by his employer 21 days after he engaged in a protected activity was "significant enough to constitute indirect evidence of a causal connection so as to create an inference of

retaliatory motive.").  Accordingly, the Court is satisfied that Plaintiff established a *prima facie* FMLA retaliation case.

The burden then shifts to Defendants to establish legitimate, nondiscriminatory reasons for Plaintiff's termination.  The two reasons Defendants provide are: (1) A4's financial situation at the COVID-19 pandemic's early stage, and (2) Plaintiff's job performance.  Plaintiff must present additional evidence rebutting Defendants' proposed reasons for terminating her to survive summary judgment.  *See Hodnett v. Chardam Gear Co., Inc.*, 749 F. App'x 390, 394 (6th Cir. 2018) (citing *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008)).  "To do so, she must demonstrate 'that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'"  *See Mullendore v. City of Belding*, 872 F.3d 322, 328 (6th Cir. 2017) (quoting *Grace*, 521 F.3d at 670).

The Court finds that Plaintiff has satisfied her burden at the summary judgment stage.  Plaintiff offers two arguments in support.  First, that Defendants had notice of her taking FMLA leave.  Defendants first approached Plaintiff about her termination only after she sought exercising her FMLA rights.  Second, that Zanchetta was hostile to Plaintiff and actively discouraged her from exercising FMLA rights.  At oral argument, Plaintiff's counsel directed the Court's attention to a recorded conversation Plaintiff had with Zanchetta about FMLA leave.  After

Plaintiff expressed her intent to take FMLA leave, Zanchetta responded that "[Y]ou can do that, but if you're on FMLA I don't know if you can apply for unemployment.   I mean it's your right.   You can definitely apply for FMLA … that's fine too."  *Id*. at PageID.175.  In the light most favorable to the Plaintiff, that exchange potentially demonstrates Defendants' proffered reasons for Plaintiff's termination were pretextual.   A reasonable juror could find Zanchetta's remarks specious and coercive.  What Zanchetta intended by her comments must be viewed in the light most favorable to Plaintiff and resolved by a factfinder.  These issues of material fact prevent the Court from awarding Defendants summary judgment.

Had Plaintiff relied exclusively on the temporal proximity between her termination and her leave request, she would not overcome Defendants alleged legitimate reasons for termination.  *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001) ("[T]emporal proximity is insufficient in and of itself to establish that the employer's non-discriminatory reason for discharging an employee was in fact pretextual.").   As a matter of law, "more than 'a mere scintilla' of evidence" is needed to demonstrate that Plaintiff's termination happened because she requested FMLA leave.  *Mullendore*, 872 F.3d at 328.  But the evidence that Zanchetta discouraged Plaintiff from exercising FMLA rights creates a disputed material fact.   The conversation, viewed in the light most favorable to Plaintiff, provides sufficient evidence to survive summary judgment.

*See Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) ("To carry her burden in opposing summary judgment, [a plaintiff] must produce sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired her[.]").   Considered alongside the temporal proximity of her termination, Plaintiff can establish that Defendants' stated reasons "did not motivate the termination" here.  *See Donald*, 667 F.3d at 762.  Accordingly, the Court will DENY Defendants' motion for summary judgment from Plaintiff's retaliation claim.

### b.  Interference Theory - § 2615(a)(1)

Defendants next argue for summary judgment on Plaintiff's interference theory claim.  The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, a right provided in this subchapter."  29 U.S.C. § 2615(a)(1).  Actions brought under this subsection are claims for unlawful interference with FMLA rights.  *See Mullendore*, 872 F.3d at 327.   Like FMLA retaliation claims, the Sixth Circuit "assess[es] FMLA interference claims under the burden-shifting framework defined by *McDonnell Douglas Corp. v. Green*[.]"  *Id*.

To establish a *prima facie* FMLA interference claim, Plaintiff must meet the following elements: "(1) [she] was an eligible employee as defined under the

FMLA; (2) [her] employer was a covered employer as defined under the FMLA; (3) [she] was entitled to leave under the FMLA; and (5) [her] employer denied FMLA benefits to which [she] was entitled." *Dyer*, 934 F.3d at 475 (citing *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427 (6th Cir. 2014)). "A benefit is denied if an employer interferes with the FMLA-created right to medical leave or to the reinstatement following the leave." *Tennial v. United States Parcel Serv. Inc.*, 840 F.3d 292, 308 (6th Cir. 2016).

As with Plaintiff's retaliation claim, the Court finds that Plaintiff established a *prima facie* interference claim. The only element Defendants dispute is whether Plaintiff was entitled to FMLA benefits. While Defendants employed Plaintiff, FMLA leave for serious medical surgery was her statutory right. 29 U.S.C. § 2612(a)(1)(D).

But successfully establishing a *prima face* case does not make Defendants strictly liable for terminating Plaintiff's position. *See Grace*, 521 F.3d at 670 ("[I]nterference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct.") (quotation marks omitted). Defendants assert the same purported reasons for terminating Plaintiff as raised in the FMLA retaliation claim. As discussed *supra*, Plaintiff presents evidence from which a reasonable jury could conclude that those reasons were pretextual. In the light

most favorable to Plaintiff, a reasonable juror can conclude that Defendants interfered with Plaintiff exercising her FMLA rights. Therefore, summary judgment is improper.

## IV. CONCLUSION

For the reasons discussed herein, the Court will DENY Defendants' Motion for Summary Judgment [#20].

The Court will also DENY Defendants' motion to strike Lucy K. Keith's declaration [#24].

IT IS FURTHER ORDERED that motions *in limine* and a final pre-trial order be submitted by April 13, 2022.

IT IS FURTHER ORDERED that a final pre-trial conference is scheduled for April 25, 2022, at 2:00 p.m.

IT IS FURTHER ORDERED that a trial date is scheduled for May 17, 2022, at 9:00 a.m.

**IT IS SO ORDERED.**

Dated: February 1, 2022 /s/ Gershwin A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 1, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager